I don't know if I pronounced that correctly. There's a button on the right hand side and you can lower the podium. If I could just have a minute. Sorry. May it please the court. May it please the court. My name is Donna Newman and I represent Appellant Defendant Adam L. Oliva. I believe that's the way he pronounces it. Thank you. Your Honor, we're here today with respect to our claim that the court should vacate the certain conditions of supervised release that were imposed and other vacate to remand for further explanation. The first thing I'd like to address, because I think it is the first thing, is the standard. The government says, and it is true, that we did not object. Underneath, the attorney did not object at sentencing to the conditions. He didn't write a letter to probation with respect to any conditions. But we nonetheless say that because here there's no evidence that the defendant actually was on notice, that the more relaxed standard that this court has applied numerous times to situations like that, that that applies. But he was on notice of standard conditions. I mean, there's a difference between standard conditions and special conditions, correct? Well, I think I'd like to address that. There is a difference, but the question I think the court is saying is whether or not that difference allows the district court not, or does not obligate the district court to give reasons on the record. So let's just go back for a moment to set this right, and that is the defendant, yes, the conditions were in the pre-sentence report. But it is clear from the record that the district court didn't ask the defendant, did you review the PSR with your counsel? Do you understand the conditions? Or did the district court ask even counsel, did you go over the entire PSR, including the recommended, not the recommended, the mandatory conditions that were in the PSR, the standard conditions and the recommended special? That was not stated to the, by counsel. So we do not even have a record as that. And just so the court is aware of how things have changed in light of the, this court's recent decisions, now the district court that I've been before at sentencing actually asked counsel, at least a few times I've been here, that have you reviewed condition to supervise release? And asked the defendant that. So I think that that is missing, and you cannot say that this defendant with a ninth grade education was so informed. Now, yes. Perhaps I'm misreading the record. Sure. You can correct me. I thought the district court did say I'm imposing the standard conditions in the PSR. Did I misread the record? No. If you were talking at the end of sentencing. At sentencing. Yes, yes, yes. At the end of sentencing, he does say that. But that is my suggestion and what we, what I am arguing that that's not, that's not noticed. That's not indicating that this defendant with a ninth grade education had noticed. What? Yes, I'm sorry. And you also said the court did not ask counsel or the defendant prior to imposing sentence if he had reviewed the PSR with his attorney? The court did not do that inquiry? To the defendant. Yes. On, if you, in the record on page 58, there is a colloquy between the counsel and the court with respect to the beginning of sentencing, what was reviewed. Now, it's important to understand. He asked him if he reviewed it with his client. Yes. And he says he does. But it's not my position is that he, while he says that, the reference, if you take the total colloquy in context, he says, and if I may go back, it's important to understand that this had begun I think a week or two before the sentencing and they had adjourned it because the defendant admitted he hadn't read the PSR, hadn't been reviewed. So then they come back. At that time. And so now they come back and he asks counsel if he's now reviewed it with his client and you're saying the district judge erred in not then also confirming it with the defendant? He did not, correct. And based on what? What do you rely on for the fact that that was error? Because the issue here is a matter of due process. So if in fact the defendant, which particularly in light of these circumstances in May 4th, you have to say, did you review it to the defendant? Did you understand it? So all we have here, and the context is important, if you look at the transcript, he said the court, he said I'm going to, I'm looking, I'm sorry, on A58 and I'm on line 13. The information I have is the pre-sentence report prepared on April 24th, 2023, and it contains a determination, probation department, the defense level is 33. And then he goes through the calculations. Ms. Newman, is it your position that if the defendant had been asked after his case, he'd reviewed it with him and there had been an adjournment for just that purpose, that if he'd been asked, he would have said, nope, my attorney didn't review it with me? He wasn't asked, so he wouldn't say that. All I'm saying is that even. Maybe you ought to leave that to a collateral challenge and then there can be a hearing and your client can testify to whether he had it reviewed or not. Well, Your Honor, the point of the matter is that at no point was, I'm talking at this beginning point, by the way, because we, later, oh, no point is the condition to supervise release discussed at this point. And I say that that is important today. Now, when we go back. There's no objection after this is done, so we're on plain error review unless, as it seems, your argument is suggesting counsel is ineffective here, that that's your client's argument. Am I missing something? That is not my argument, Your Honor. Okay. So if you're not charging counsel with ineffectiveness, there's no objection to this. So what is the plain error here? Because this Court, I am not saying that it's no plain error, but I am saying it's that relaxed standard. And I am saying if you look on A73, when the Court does mention conditions of supervised release, again, it does not explain. If we look at, for example, the special conditions, because it does mention special conditions, A73 in the record. And in that, it says that you will participate in an outpatient treatment. Does he mention drug treatment? Does he differentiate between drug and alcohol treatment? No. And what we do know, Your Honor, is this is evidence that the Court had not done that independent analysis, and the record actually supports that there should not be alcohol treatment. So we, the PSR states, paragraph 65, please, I believe. In any event, the PSR in paragraph 65 that deals with the defendant's treatment, his drug problem of marijuana, states specifically that he only drank alcohol as a teenager and had not drank it since 2019. Why are we wasting, as a matter of policy, why are we wasting money on alcohol treatment that he doesn't need? To the Court's point, after, when he gets out, if the probation determines that he has an alcohol problem, then he can have that treatment. But the important point here is that special condition was not discussed. That special condition was not given reasons, and we know that because it includes a search condition. That was also a special condition. But while it says that I'm going to also will submit to a search, we don't, doesn't announce what that condition is. And there, it's very extensive. This case was such a drug conspiracy, had nothing to do with data storage. This, Mr. Oliva had, was a street seller. He didn't, this wasn't about calling up sources. There's no reason for that search condition. There's no independent reason. That's why we know there was no analysis, and in fact, there was none. That's what the record shows, and that's what is required. If this is a group that had used computers and social media in connection with the crimes, and your client's firearms use is documented, so I'm not sure why the search condition, why you're saying that this search condition was inappropriate. There are conditions even that would allow, there are circumstances that would allow. This is not one of them. This would be that any time you're in a drug conspiracy and anybody in the conspiracy has a weapon, the weapon was not tied to his home. It wasn't tied to his car. It wasn't tied to his computer. And it was said. Counsel, wasn't the evidence that your client regularly posted on social media, including not only that he possessed multiple firearms, but that he posted on social media regularly about the exploits of his drug dealing, including photographs of controlled substances and large sums of cash? In those discussions, I admit that it was not so. Let me finish the question, okay? That's usually how this works, so that you can answer the question. If, in fact, we agree with you that the court didn't explain the reason for the search condition, but it is evident from the record, because the PSR notes that he regularly posts about his drug transactions, posts photographs of large sums of cash and drugs on social media, why would that not be alone enough evidence to make itself evident that that special condition should be imposed? Because that's what the law says. We can look to the record to see if it's evident from the record. Yes. I agree that it's the law. Do not dispute that that is the law. And I have argued that. But I said that there is more, just like with the drug treatment, which is evident. Let me just go to the education, because the court does give specific reasons for the requirement about the GED. But what it says on the record is that the defendant is required to take the courses and is required to get his GED. In the judgment, he says, just take courses. So he switched the requirement to obtain the GED, which is in the transcript of the sentencing proceeding. I believe it's A-80. And if you compare A-80, I might be wrong. I'm sorry. A-73. If you look at A-73, I'm adding a third special condition, and that is that Mr. Oliva obtain his general equivalently diploma. So what's the argument? I mean, it's clear, the pronounced sentence, the orally pronounced sentence. And then, Jay, in the judgment, that this, nonetheless, has to be remanded so there's a clarification, because the judgment says only courses. And there's a great difference between a requirement that you must obtain, which we say there's absolutely no basis for that. Well, this is a defendant who, in arguing for leniency, highlighted the fact that he had taken eight courses in prison successfully. I mean, what was the reason to think he couldn't obtain the GED? I mean, there's the entire colloquy about how, yes, he sees that education is what he needs now, et cetera, et cetera. What's the argument that this is problematic, that he obtained the GED? Well, A, it's a requirement that he obtain it as opposed to just taking courses. I understand that. What's the problem? The problem is you're assuming simply because he's taken courses that he will be able to pass the GED. My experience is that there are people, and I have them as clients, that can take a hundred courses. Right. Here again, though, there was no objection to this condition when it was pronounced. That's true. All right. But the point of the matter is there's a dispute. I'm sorry. Because you're over time. I'm sorry. On your, where you led off with the concern that your client was not asked to confirm about his review of the PSR. I'm looking now at page 11 of your brief, the final paragraph on that, where the statement is made, the district court confirmed that there was no objection to the PSR and other written materials. Now, I understand that the citations there are to the confirmation with counsel. But I'm looking quickly through your brief. Did I overlook where you argued in your brief that one of the flaws here was not questioning Mr. Oliva directly? Yes. Please help me find that. Yes. Rather than I will, when I reply, I will come back so that, because I have three minutes to reply, but I believe it's in my reply brief. Not in your reply brief. Yes. But you tell us where it is. You are nine minutes over time. And when you get back up, I also have a question for clarification. Sure. You seem to raise an argument that's new, at least that I'm hearing, that there's a discrepancy between the oral pronouncement and that sentencing and the judgment. But when I look at the judgment, it says, you shall take courses in order to obtain his GED if he has not already done so while in prison. So clearly the taking courses was to obtain the GED. When you get back up, explain to me why that's a variance from the oral pronouncement. Absolutely. Thank you. Thank you. May it please the Court, I'm Assistant U.S. Attorney Adam Hobson. I'm representing the government here on this appeal as I did at the sentencing below. The terms of supervised release here that Judge Stein imposed were each reasonably related to the goals of sentencing and were well supported by the record. As this Court has noted, the record showed that Mr. Oliva was a smart and capable young man who had spent most of his adult life working with the Blood Street Gang to commit crimes and sell drugs. He also had a history of committing crimes while on State supervised release, and he had a history of substance abuse for which he had been unsuccessfully treated in the past. At sentencing, as the Court noted, Oliva's counsel actually argued that what Oliva needed was the education and drug treatment and structure that would come with supervised release so that a more well-equipped Oliva can emerge. And defense counsel argued this because the record showed that that's exactly what Oliva did need. Each of the conditions that he is now challenging on appeal were clearly imposed to meet these goals of helping him get the skills and structure he needed to reintegrate into society so that he would no longer be a threat to community. It was not plain error for Judge Stein to impose any of these conditions. I'm going to now address some of the specific arguments the defense counsel, I'm sorry, appellate's counsel raised in her arguments. May I first ask you a question that doesn't relate directly to the arguments on appeal but perhaps puts this case in a bit of context? This is a drug case, right? A gang and drug case is how I would characterize it. And in connection with it, there's supposed to have been use of guns, the discharge of the firearm by the defendant in 2015, the pistol whipping in 2017, right? Yes, Your Honor. But it's basically in the context of a drug operation. A drug operation which was a gang operation. The guilty plea is to 18 U.S.C. section 371 rather than 21 U.S.C. section 846. I'm not sure I've ever seen that in a drug case. Is there something I'm missing that puts that in context? It was in the context of plea negotiations. The 371 results in a five-year cap. And so that was the benefit being given to the defense? It was a significant benefit, obviously, given what he was charged with. We thought in light of this, there's a lot of litigation history here, but we thought it was appropriate. So it's in that context that we're now dealing with these challenges to the supervised release conditions. Let me let you continue with your argument. Of course, Your Honor. First of all, I just want to make it clear that Judge Stein did confirm that the defendant had read the PSR, although not indirectly questioning the defendant. He did adjourn the first sentencing so that the defendant could fully read the PSR. And his counsel confirmed at sentencing that he had read the PSR. Also, when Judge Stein imposed the conditions of supervised release, he not only referred to the PSR, but referred to the specific pages of the PSR that he was referring to, both for the special conditions and for the standard conditions. Under this Court's precedence in Trucello and Jacques, in more recent cases like, I believe, Washington, that that is perfectly normal and acceptable. And defense, the appellant has pointed to no case to the contrary. As for the specific conditions here, I'm going to focus on the special conditions because I think the standard conditions that's well established are appropriate. The drug treatment condition, these are appropriate wherever there's evidence of substance abuse. It's reasonable if there's evidence of substance abuse in the defendant's history. And here there was. He admitted to using marijuana ever since he was a teenager up until the day of his arrest. He admitted to having unsuccessfully completed substance abuse treatment in the past. And he said that he didn't feel right when he was not using marijuana. Those all gave Judge Stein a reasonable basis to agree with probation and impose the drug treatment condition here. As for this argument that I think is being made for the first time on appeal, I mean, an argument that it was unreasonable to also impose it as a drug and alcohol treatment, and that's, these programs are called drug and alcohol treatment programs. The, I've seen no case that required the judge to finally parse it and require it be only specific substances. I think that's reasonable given the fact that a substance abuse problem can often manifest in different types of substances. As for the search condition, as this Court noted, there was evidence here that Mr. Stein was part of a conspiracy with others and that he was using electronic devices to do that. He was using phones to coordinate, and he was posting on social media about his crimes. We included in our sentencing submission one of the, a photograph that he had posted in his social media account of him with a large sack of drugs and drug money and a knife taken clearly inside a residence. This all was sufficient evidence to make the search condition reasonable here. As for the GED condition, I would make two points or maybe a few points. First of all, Judge Stein extensively discussed his reasoning for this, for this condition. It was a condition that Oliva had essentially all but asked for in talking about the importance of getting his education and relying on that. We don't see conflict between the written judgment and the, and the oral judgment for precisely the reasons this Court was saying. However, to the extent there is an ambiguity, it would be the, the broader, more demanding condition would be the one that was pronounced orally. And it is, of course, the oral pronouncement that controls. So I do have a question about that particular condition. I'm not sure it's ripe. Is it even ripe? I mean, he could always come back and say, you know, it turns out, you know, some either due to a preexisting or an interim condition, I can't do well in school. Highly unlikely since he was telling the Court I'm taking courses in prison, I'm getting A's or, or high grades. But is it even ripe? Because it is quite possible that he either has already, may be moot if he's already obtained his GED, but it may also not be ripe because it's an ongoing condition to sort of achieve this. He could always come back and say, you know, there have been intervening circumstances that preclude me from getting the GED. So I'm questioning whether it's ripe. I think that's exactly right, Your Honor. Whether it's viewed as ripeness or just the fact that the remedy here in those circumstances would be for him to seek a modification of the terms of supervised release. That's typically done when, for whatever reason, a condition becomes impractical. I did reach out to the Probation Department and confirmed that he has not yet obtained his GED, but he is continuing to take classes towards his GED. So there's no evidence that anything has changed that would require such a modification. But, of course, if something did change, he could seek that modification. And then if Judge Stein denied it, that might be a different issue. But it's not one that's before the Court at this time. In summary, it was not plain error to impose any of the conditions of supervised release in this case, and the Court should affirm. Thank you, counsel. I'll be brief. The first question, I believe, had to do with where within the reply brief. I think it's in my opening brief, but I know it's in the reply brief, with respect to the notice and what was said. And I refer the Court to page 5 of my reply brief. I see, Ms. Newman, that you fault the district court for not confirming with Mr. Ali, but that he emphasized he had read and understood the reasons for each of the conditions. You don't cite any authority for that particular requirement, that notice requires that kind of a colloquy? Is there something that supports that? Well, I'm sorry. Your Honor, the cases that I do refer to talk about the client having the notice. And the only notice we have, we're not saying it wasn't in the PSR, because in those other cases, they were, I think Soski likewise had in the PSR. No, but I want to understand whether you're saying that notice requires more than alerting the defense to the conditions and confirming with defense counsel that he has reviewed the document, in this case the PSR, that provided notice of those conditions. You're saying even more than that is required to satisfy the notice requirement. The problem here, Your Honor, is the problem. I'll speak up. I'm so sorry. The problem here is that that was no statement either by defense counsel and by the Court with respect to whether the conditions of supervised release were actually referred to. Now, why I say that in this context is the colloquy between the Court and defense counsel as to what was reviewed with the defendant. And when they talked about the PSR, the review of the PSR, the Court specifically said we refer to the calculations and the recommendation and did not. And then by that exclusion, I say that omission, particularly when there's no other reference, I'm going to get to then the court says that refers to the PSR and pages in the PSR, but it doesn't give what exactly was stated. So we don't have on the record that as to even the standard conditions, but as to the special. I think we understand that part of your argument. And if you could address the second issue, because you're now out of time on your rebuttal as well. Thank you. Let me go to the second issue, which is the education issue. I believe that's what the Court had asked, what was the distinction. So if you look at the Court on A73 says, I'm adding a third special condition, and that is that Mr. Oliva obtain his general equivalency diploma. In the judgment, it says, and that's on A81, it says, you shall take courses in order to obtain the GED. And all we're saying is that a violation to oral controls, he can be violated for not obtaining his GED. And it is not for us to keep going back to court. It should be clear to the defendant at sentencing what is his obligation. And if he cannot obtain it, then what you're suggesting is we go back to court. The recent decisions in this case, this Court has been, that we can avoid that. And that's why I say even as to alcohol, it's not clear that he's not being had by the court. And I think we understand your argument.  Thank you very much. Thank you. Thank you. Both sides will reserve judgment decision on the case.